The next case on our calendar is versus Commissioner, number 173684. Thank you. Good morning, Your Honor. I am Richard Grabo. I represent the appellate Brett Trepanier. Good morning, Your Honor. Good morning. Good morning, Your Honor. The fundamental issue presented for adjudication in this case is whether or not the administrative law judge assigned residual functional capacity, also known as a RFC, in excess of all the RFCs opined by the physicians reviewing this case, and if so, if that's permissible under the substantial evidence standard. So it's important to put this case in context because Mr. Trepanier, during the relevant portions of this case, was either over the age of fifty or over the age of fifty-five. Therefore he was closely approaching advanced age or of advanced age, and a finding that Mr. Trepanier retained in the absence of any transferable skills, either a sedentary work capacity or a light work capacity, would have resulted in a favorable decision or an entitlement to benefits. Judge A.L.J. Thomas assigned him, in the notice of decision, a medium work capacity, which is the capacity above the two levels that would have resulted in an entitlement. The opinion evidence in this case involved opinions that were rendered by the administration's examiners, that's Dr. Wurzel and Dr. Bernstein. There was an opinion by Dr. Reicher, who is a consultative examiner, that's an individual retained by the administration, and an opinion by Dr. Sinousis, which was one of the treating physicians, as well as one other opinion, a statement that I'm going to characterize an opinion that seems to have been missed during scrutiny of this case by Judge Thomas and perhaps by counsel. But in reviewing the record last night, there's a statement in the record at page 712 by Dr. Sinousis, a surgeon who performed bilateral knee replacement, where he states, quote, I continue to feel he should be considered social security disability. Perhaps not the most artful statement, but it's another statement that is, in fact- So Dr. Mochel, in 2011, cleared Mr. Trepanier to go back to work, his medium work, in the town of Cromwell, right? At some point in 2011, he did clear him, Your Honor. I have April 5th that he was cleared to go back to work. And in 2013, Dr. Reier said that Mr. Trepanier can lift, according to Mr. Trepanier's own statements, that he can lift and carry 30 pounds, right? That's correct, Your Honor. And it seemed to me that what we were ending up talking about was whether, even though he could not, he could only do some things like twisting and bending and so on occasionally, that you were looking for an explicit finding in the record that he could lift up to 50 pounds, and that absent that, he wouldn't be properly treated as able to do medium work. Am I right in that? That's correct, Your Honor. I'm looking for a specific opinion within the record by a physician that he can lift and carry up to that weight. So I'm having a little trouble with that. I don't see it there, but the light, medium, heavy, very heavy work ranges do call for lifting up occasionally up to 50 pounds. But we had Dr. Reiher saying he could, by his own account, lift and carry 30 regularly, and Dr. Mochel said he could go back to work, knowing it was medium work, and that he would be called on to lift up to 50 occasionally. Why isn't the combination of those two opinions sufficient, substantial evidence to support the ALJ's opinion? Let's take them separately, Your Honor. So Dr. Reiher's opinion that he could lift up to 30 pounds. Lift and carry 30 pounds, not lift up to 30 pounds. And carry up to 30 pounds. So he was talking about carrying regularly 30 pounds. Yes. He gave no opinion. The record was silent as to up to 50. There's nothing in the record that suggests that, there's no opinion that suggests he can lift or carry up to 50 pounds. And there's no one saying that he can't either, right? It's, Your Honor, there has to be medical opinions within the record that the ALJ can cite to in order to make a finding. He can't cite the fact that no one's saying he can't do it as substantial evidence or support of the ability to lift that. I understand, but I did want to just confirm with you that there's no opinion to the contrary, is there, right? No, there's no opinion to the contrary. There's no opinion that says he can't lift 100 pounds either, Your Honor. So at the risk of sounding blatantly obvious, 30 pounds is not 50 pounds. That represents an increase of 60% in the amount that one can lift. I'm aware of how the numbers are, but what I'm just looking at is he was saying he can do this lift and carry regularly. And Dr. Mochel permitted him, after his second knee surgery, to go back to his medium job at which he had to lift up to 50 pounds. So, yes, at that point in time, well, he returned for what turned out to be a fairly short period of time. He was released in April, and several months later, three months later, he was no longer working for- But he was dismissed. Yes. So that wasn't necessarily a reflection of his ability or inability to do the job at the time. He was dismissed for conduct-related reasons. Generally under Social Security regulations, Your Honor, when an individual is released to return to work, there is what's called a trial work period, or a period of time that the individual has in order to see whether or not there can be a successful transition back to work. It's generally up to six months. If an individual tries to work, and within a six-month period- But I'm saying here, in this case, I don't think you can rely on the absence of a six-month period because the reason it didn't occur was that he was dismissed from his job. So we don't really have a basis for looking at how the six months went from a health perspective, right? Yeah, I understand that, Your Honor. It's also, that is a period of time that's only, it is subsequent to the alleged onset date, but the court's adjudication is in 2016, I believe. So you're looking at an extensive period of time. But aren't we supposed to look at the, he alleged an onset date, which was coincident with the date of his termination, right? 2011. He stopped working on that date. There was no other substantial gainful activity subsequent to that date, Your Honor. But the court has to adjudicate an entire period of time. So if the ALJ adopted the argument or the rationale that's being employed by the court, it would apply to a very limited period of time. But then, subsequent to that, Your Honor, there are opinions rendered by medical professionals, physicians that have, that are familiar with Social Security regulations, both by the administration and treating sources, that are contrary to that. And Dr. . . . Right now, aren't we called on to review the ALJ's decision about the legitimacy of an onset date of April 5, 2011? Isn't that what your client claimed? It's incumbent to adjudicate the entire period, Your Honor, not just a short period of time. Are we free to find a different onset date? You know, to say that, as of 2011, we find substantial evidence in support of the ALJ's determination that he was able to do the 30 pounds and 50 pounds, but we have doubts about some later period. And so, do we remand or do we set a separate date at which we don't, we think that the record didn't support that he was still able to lift 50? In practice, Your Honor, that happens all the time. There are some partially favorable decisions wherein an ALJ will assign an RFC that only applies to a certain period of time and then, at a subsequent date, assign a lower RFC and create an entitlement for . . . Of course, that isn't what happened here. That isn't what happened here. He adjudicated, he found, excuse me, the ALJ found that he had a medium work capacity for the entire period of time. And your client would be entitled to reapply for the period subsequent, right? He did, Your Honor. But he did not? He did. He did? Yeah, he was . . . So, does he have a current application pending for, like, 2015 to date? He was summarily awarded benefits upon reapplication, Your Honor. And that was when? That was, that takes place after, only after the denial by the Appeals Council. Yeah. Because . . . So, when was that, I'm asking you? I don't know off the top of my head when the denial was by the Appeals Council, Your Honor. I can approximate it, Your Honor. The Appeals Council takes about 12 months to adjudicate a matter. Judge Thomas's decision is November 2015. Sometime late in 2016, the Appeals Council would have adjudicated this matter. He's been on disability for roughly two years now? Yes, Your Honor. Okay. Yeah. Thanks. So, to return to my argument, and as I said before, 30 pounds is not 50 pounds. It represents a substantial increase in the ability to lift and carry weight. I said 60 percent, Your Honor. It's actually only 40 percent. But for those of us who spent most of our life in the gym lifting and carrying weights, we know that the difference between 30 pounds and 50 pounds is extremely significant. You don't have to be an expert to know that it's necessary to carry, there's substantial more force necessary to carry 50 pounds. What's the relief you're seeking? This matter should be remanded, Your Honor. Remanded? Yes. Not for reconsideration or for an award? Well, Your Honor, I think there's still – in my opinion, what should have happened, Your Honor, is he should have been found either to have retained a sedentary work capacity or a light work capacity. Those are the two findings that I think would be supported by substantial evidence because either of those two findings might be appropriate or would be appropriate, then that would affect the onset date, and I think Judge Thomas would still retain the ability to make one of those two findings. They're both – Yeah, but what would be appropriate isn't necessarily what's required. Excuse me, Your Honor? What would be appropriate isn't necessarily what's required. I think the appropriate result is to vacate the decision and remand for new hearing, Your Honor. That's what I think the appropriate result is. And I don't think Judge Thomas retains the ability to do what he did, which is to set an RFC which exceeds all of the RFCs assigned by the physicians that reviewed this case. I think what the law provides for under these circumstances, based upon the substantial evidence review, is that – and to use a football analogy, the doctor set the boundaries, and the judge, he can come in anywhere within the boundaries so that in a case like this, he could have said sedentary, he could have said light, he could say less than sedentary, but the boundaries are set by the doctors. And when the judge goes outside the boundaries and finds an RFC that exceeds all of the RFCs that have been established by any reviewing physician, he has effectively exceeded what under the regulations and under the case law that's cited in my brief, and that exists within this jurisdiction. Would the commissioner be able, if we were to remand, would the commissioner be able to go back and seek clarification from Dr. Reier, who said he could lift and carry 30 pounds frequently, about whether there was a maximum, he had a view about the maximum that he was able to lift at the time? Would the AOJ have that authority? Yes, to ask the commissioner to supplement the record, because as I said, it's silent as to the maximum. It says what he can do frequently. It might be problematic, but he certainly has the authority to make that. And if he wanted to, which he didn't – maybe wanted is the wrong term. If he thought it was appropriate to assign a medium RFC, Your Honor, he should have sought clarification because then there would have been a medical opinion which would have substantiated and supported what the – what Judge Thomas thought to be the retained residual functional capacity. Okay. I think we have the argument then.  Thank you, Your Honor. Ms. Cohn. Good morning, Your Honors. May it please the Court, my name is Christina Cohn, counsel for the commissioner. Your Honors, the commissioner's decision must be affirmed if there is substantial evidence to support his finding. Under the medical vocational rules here, Trepanier is not disabled because he can perform medium work. So, talk to us directly about the part of medium work that requires a demonstration that he can lift 50 pounds. Sorry. I don't see anything in the record. Sorry, Your Honor. I would like to note first there is Social Security ruling 8310, which does note that being able to do frequent lifting or carrying of objects weighing up to 25 pounds is more critical than being able to lift up to 50 pounds at a time. But that doesn't eliminate the 50-pound requirement from the definition of medium work. So, what should we look to as substantial evidence supporting the ALJ's decision? Of course. We can look to the abundance of evidence in this record here. We can look to the fact that Mr. Trepanier was performing his heavy job for years with the same impairments that he now argues are disabling during the relevant period. We can look to Dr. I agree that osteoarthritis can increase in severity over time, right? Correct. But we do not see, based on this record here, a worsening in Mr. Trepanier's conditions. We see throughout the record, both before the alleged onset date and during the relevant period, the clinical findings consistently show that he is neurologically intact, he has intact sensation, he is only a mildly intagic to intact gait. But over time, we see also that the doctors, Dr. Wurzel in 2013 was saying he can occasionally lift 20 pounds, frequently lift 10. We have Dr. Bernstein in 2014 saying he's able to lift 20 occasionally, 10 pounds frequently. I mean, he has a decreasing capacity that's reflected in the record. Well, we do have the opinion of Dr. Reier that shows that Mr. Trepanier can lift and medium work here. It doesn't say that he can lift up to 50, and that's also part of the medium work definition, right? Right. But we still have those consistent clinical findings showing that he does have full strength here throughout the relevant period, which supports the finding that Mr. Trepanier- What are you referring to when you say there are consistent findings that he can, he has full strength? Sure. I mean, I can refer you to transcript pages 462, 511, 533. They're Dr. Mochel's clinical findings. They're clinical findings from Dr. Buckley at, I believe it's Prowse Higginom and Internal Associates. We have Dr. Mochel stating that Trepanier can keep working right around his onset date at his heavy job where Mr. Trepanier said he was lifting up to 100 pounds. That's transcript page 227. What is the relevant period as far as you're concerned? I want to make sure we're all clear on that. Sure. Sure. Of course. It's the wedge onset date was June 15th, 2011 through the ALJ's decision of November 2nd, 2015. Your colleague suggests that it might be appropriate if we are dissatisfied with some aspects of the record here to remand for reconsideration of whether a subdivision of the six-year period, I guess it's six-year, 11 to 2016, five-year period or six-year period might be appropriate. Do you agree that that's a possible resolution? I do not agree, Your Honor. I do not think a remand would yield a different outcome here. You have an abundance of evidence here. You have his orthopedic surgeon saying he could return to his heavy job subsequent to his most recent knee surgery. You have the consultative examiner opinion, Dr. Ryer, saying he can lift the 30 pounds. What do we have in 2014? In 2014, we have Dr. Buckley, his internist, advising him to start a progressive walking program. We also have Mr. Trepano telling his internist he can do most of his activities of daily living even with his alleged pain. That's not medium work. Neither of those is equivalent to medium work the way I read the definition. We also have Mr. Trepano is applying for unemployment benefits. And on transcript page 632 and 636, he's telling Dr. Buckley he just met with a labor board. He feels they may vote in his favor at the end of August. This is establishing that he is ready, willing, and hopeful and able to work. But again, that could be sedentary work, right? What is there to indicate that he was prepared to do medium work as of that time? Well, it suggests that perhaps he was trying to get his job back by mentioning the labor board. And there's also evidence from Dr. Mokal as late as 2014 noting that this is the latest report from Dr. Mokal stating that he's doing fairly well, able to do most of his activities, and medication is controlling his pain. Again, there's been no worsening. There's no reference to him doing medium work. But there's been no, right, there's been no worsening of his impairments. So this record has not shown that from the period before 2011 to 2015, there's been a worsening in his condition. Dr. Mokal, the doctor who performed his orthopedic surgeries, stated he can work, he can go back to this heavy park maintenance job. That was in 2011 again, and in 2014, the Social Security Administration's own doctor is saying he's able to lift 20 pounds occasionally. And 10 pounds frequently. That strikes me as more consonant with light work or sedentary work. But it is rebutted by Mr. Trepano's own admission that he can lift and carry up to 30 pounds. But that was in the year before, right, in the summer of 2013. There's still been no change in the clinical findings from Dr. Buckley, from Dr. Mokal throughout the relevant period from 2011 to 2015. To show, there's been nothing to show a decrease in sensation in his reflexes and his strength. The ALJ is tasked with determining the RFC, and he looks at the entire record here, these medical reports showing. What concerns me is that your argument seems to be he could work. And I think it seems likely from this record that he could work. But the finding that we're asked to examine is whether he could do medium work. And by the Social Security Administration's own regulations, that requires a certain physical exertion capacity that's defined by weight. And what I'm seeing is the record fades on that score as the years pass since 2011. I'm looking at, again, August 2015, Mr. Trepano states that even without medication, he's able to walk for an hour or two, suggesting that with his prescriptions, he could walk for more than the two hours. And again, we have his own report, he can lift up to 30 pounds. We have the state agency doctor's opinions, which are consistent with the walking and exertion capacity, the state agency physicians are also consistent with the postural limitations that are noted in the RFC finding here. One of the points that Mr. Graybaum made was that he's getting older over this time period. So is there anything in the record to indicate that his capacities are diminishing after 2011? There's nothing in this record. The clinical findings are consistently saying the same. The condition alleged is a condition that this gentleman has had for years where he was able to maintain his very heavy park maintenance job. He was able to perform that job on the same medications that he's currently on. There is nothing clinically here to show that his conditions worsened from 2011 to 2015. Once again, the ALJ is the individual who's ultimate determiner of disability. He combed this record, he looked through this record, there is nothing here. The medical reports consistently are showing that this gentleman is neurologically intact, that he has- Ms. Cohn, do you agree or do you not have knowledge about Mr. Trepennier currently having applied for disability in 2015 or 16 and being granted? I do have knowledge of that, Your Honor. He was granted benefits in 2016, but it was for a different period of time, and it's for different impairments. It actually has to pertain to, he had a cervical condition, it looked like he had cervical surgery. And it also seemed to deal with a worsening of his mental conditions, which is not an issue here. Okay. Is it correct that Dr. Sinousa's opinion was given no weight by the ALJ? Yes, Your Honor. As a threshold matter, Dr. Sinousa's did not provide a medical opinion. It was a statement on an issue that's reserved to the commissioner. Doesn't your regulation say that it can't be ignored? It can't be given controlling weight, but it can't be ignored? Correct, and it was not ignored here. He said he gave it no weight, didn't he? Right, but if you- Not ignoring it? Well, that's semantics. If you go to page transcript 21 of his decision, the ALJ explains that, he explained no weights to Dr. Sinousa, stating that Trepanier's orthopedic examination findings were minimal. Records show Trepanier's pain management treatment had been relatively effective in controlling his symptoms. Dr. Sinousa's own treatment notes show that Mr. Trepanier had a normal gait, normal muscle strength, that does not support his opinion of disability. The ALJ also states that the record does not show- He's giving it no weight, because it was on an issue reserved to the commissioner. He accorded it no weight, but he did apply this- And your regulation says he can't do that. Well, he can accord the treating physician no controlling weight, and he applied the spirit of the treating physician rule here by stating in his decision- No, he didn't say I don't give it controlling weight. He said I give it no weight, didn't he? He never said no weight, but he still explained the- A reader is able to see here that the reasoning why he rejected Dr. Sinousa's statements, because the ALJ gave details in his decision as to why he rejected that opinion. He stated that Dr. Ockel's treatment notes, Trepanier could return to his park maintenance job after surgery. He also stated the record did not show a worsening in Trepanier's condition. And the second- I understand he doesn't have to accept it, but if he gave it no weight, and if your own regulation says he can't do that, doesn't that alone require a remand? I would just point your honor, no. I mean, the Second Circuit has found that ALJ is not required to identify evidence explicitly. No, I'm not asking him to identify. I'm asking him not to violate his own regulation, which says, don't give the treating physician's view no weight. I would just argue that he gave a statement here. He did not give an opinion. There's a difference. The statement is an issue that's reserved to the commissioner. If there had been an opinion, then the ALJ should have accorded it either partial weight or some weight. But here, because there's a statement from the doctor, the ALJ is not obligated to credit it or reject it in any manner. I'm just suggesting he is obligated. I'm just suggesting he can't violate the regulation by giving it no weight. I'm not sure if I understand why he's violating the regulation if it's a statement and not an opinion. It's a statement. It's a statement on an issue that's reserved. The ALJ's statement? No. The doctor's statement. The doctor's giving a statement regarding- It's a legal conclusion, basically. It's a legal conclusion. It's not a medical opinion. It is on an issue that is reserved to the commissioner. Reserved to the commissioner. Correct. When a doctor states that someone is disabled- The regulation says you can't give that controlling weight, but you also can't give it no weight. We are talking about an opinion, not a statement. The ALJ, under the regulation- When a doctor says, well, I think he lacks residual functional capacity, he's then got to say, well, that's only my statement, that's not my opinion? That's the regulation, that a medical- He's a doctor, he's not a linguist. Right, but a medical opinion under our regulations, it's two parts. There's a part that's the diagnosis, there's the condition. And then there's a vocational element to it that is the functional restrictions that stem from that diagnosis. Those coupled together are what form the medical opinion. And here, there was no medical opinion. You just had a statement saying, someone's disabled. That is, the doctor can't determine disability. The commissioner is who determines disability here. And there was- You would say that's an administrative finding, not a medical opinion. Correct, correct. It's an administrative finding. It's not a medical opinion that needs to be weighed under our regulations. The doctor gave an administrative finding? When a doctor states that an individual is disabled, that is not under our regulations a medical opinion. That is an administrative finding. The doctor makes administrative findings? The doctor, that opinion is a statement. It is not under our regulations. It is not an opinion to someone's functional capacity, someone's functional restrictions from the doctor's diagnosis. It is, apples are a statement and opinion are two different things. So what's he supposed to say to make it clear to you that it's an opinion and not merely a statement? He says, in my opinion, he's disabled? Is that what- Well, I would just, our director, 441527D, for the definition of a medical opinion, is a statement from a physician that reflects judgments about the nature and severity of an individual's impairment, including symptoms, diagnoses, and prognosis. And what the individual can still do despite his impairments. So it's not just the diagnosis, it's also speaking to any workplace restrictions. It's a vocational element there. And that is the definition of medical opinion. So all, you're saying that all that Stenousis did here is sort of state he's disabled from osteoarthritis without giving an explanation as to what he can lift, how much he can walk, whether he can dance. Correct, correct. It's- So it's a conclusory opinion, it's not a detailed opinion. It's, I'll direct you- It is his opinion that he's disabled. It's his opinion, but under our regulations against 4041527, I believe it's D1. D1, yeah. Opinions that you are disabled. We, referring to the commissioner- May never be accorded controlling weight. Opinions that you are disabled, we are responsible for making the determination or decision about whether you meet the statutory definition of disability. In doing so, we review all the medical findings and other evidence to support a medical source's statement that you are disabled. A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled. Exactly. Don't give it controlling weight. And also, don't ignore it. It's very simple.  It was not an opinion that the ALJ is under an obligation to weigh or credit in any matter. He's entitled to ignore it. Not ignore it, he did discuss it. He said he gave it no weight. He did not ignore it, he considered it by- Well, isn't giving it no weight ignoring it? No, I would argue that he fulfilled his obligation- What does it mean to say I give it no weight? It means he, first obviously by referencing it, he looked at it in his analysis of Mr. Trepanio's functionality. And again, he was under no further obligation here. He, pursuant to our regulations, that was an opinion. Opinion that you are disabled is not entitled to any more weight assignments. I think we've had this conversation. Okay, I just submit- That loggerhead's here, but we'll- Sure, I would just- Thank you for your- Submit that the commission's decision is supported by substantial evidence. Thank you both for your arguments. Well now, I don't think you reserved time for rebuttal. I think we're done.